Our next case is 5080332, People v. Thompson. It is Mr. Wells for the appellant, Ms. Camden for the state. You may proceed, Counsel. Thank you for your support, Counsel. My name is Larry Dawkins. I'm here defending Mr. Thompson in this case. Mr. Thompson was convicted of aggravated unlawful restraint. He raised several issues before this court, but unless there are questions, I'm going to define my presentation today to the due process violations that are covered in Argument 2. In order to understand this case, it's important to remember that it's really part of a larger case, a murder case. Ben Slott was murdered by Michael Thompson. Michael Thompson is Travis Thompson, Mr. Thompson's cousin. The complaining witness in this case, Michael Green, is also Mr. Thompson's cousin. They come together in this case at Uncle Robert's house, at a parking lot behind Uncle Robert's house. It's the mutual home of Michael Thompson and Michael Green. It's undisputed that a group of people are together in a car. They're set upon by two gunmen. And these two gunmen take everybody out of the car with zip ties all up and down their arms. Take them in the car, out in the country, and Ben Slott is killed. But one person remained behind in that parking lot. Michael Green. Michael Green, still zip tied, went into the house, his uncle's house, Uncle Robert's house, got the zip ties removed, and went about his business. And the dispute in the case is, did he escape? Was he saved? Mr. Thompson, Mr. Thompson's father, said they cut the zip ties away from him and set him free. Michael Green testified instead that Mr. Thompson used a gun and held him at gunpoint against his will. And that's where the dispute in this case comes from. Now, because Mr. Thompson and his father testified, and Mr. Thompson testified to exonerate himself, this case is determined directly on the credibility of the defendant. In such a situation, according to the Illinois Supreme Court, no error should be permitted to intervene in the jury's determination of credibility. And here, there are plenty of errors, any one of which could have affected the jury verdict. Was he charged with an accessory to the murder case? No, he was charged with pistol whipping the complaining witness and aggravated unlawful restraint holding him against his will. He was never charged in waifs again? I don't believe so. Okay. Now, it's important to focus on the closest of the evidence in this case. There's only two witnesses who put a gun, testified to put a gun in Mr. Thompson's hands. That's Michael Green and Trevon Tripper, another person who was fit-tied in the car. We'll start with Michael Green. Michael Green testified that he was taken into the house at gunpoint, knocked down, dragged into the bedroom, and pistol-whipped and kicked. So, he was pistol-whipped so much that he was cut on the head, bled heavily, soaked his shirt with blood. There's blood on the carpet, there's blood on the bed. When blood got on the pillow, Mr. Thompson's supposed to have cursed him for bleeding on his pillow and kicked him more. But it's undisputed that just moments after that, Michael Green goes out onto the front porch where there's eight or ten of his friends, cages a cigarette, sits down and smokes a cigarette with them. And there's no evidence whatsoever that there's any blood on his shirt or blood anywhere at that time. Mr. Thompson's father, Uncle Robert, sees him when he cuts the ties loose. There's no blood on him. The next morning, Michael Green goes to a doctor. The doctor doesn't see any cuts. There's no medical treatment whatsoever. The police promptly go to the scene of this bloody event and search. There's no bloody carpet, no blood. They find two very old, very small spots of blood. Those are tested. They belong to a female. So it's very clear that Michael Green's evidence is weak. Very weak. It's directly contradicted in large part by known facts. He either fabricated large portions of this or he hallucinated large portions of it. And I say hallucinated because there's lots of evidence that everybody in that apartment was smoking cannabis for hours before these events occurred. The only other witness who puts a gun in Mr. Thompson's hands is Mr. Triplett, Trevon Triplett. Triplett's evidence is also very weak because he gave a recorded statement to the police shortly afterwards. All these witnesses did. And there's no mention of a weapon. He testifies at trial that he sees a gun in Mr. Thompson's hand, but in his original statement there's no mention of a weapon. And this is very important. We cite the case of People v. Billups for the proposition that that was substantive evidence, that there was no weapon. In Billups, a witness testified at trial, an eyewitness testified of a deceased defendant using an icebreaker, wielding an icebreaker as a weapon. But that witness had given a recorded statement earlier where he says he saw the defendant. He doesn't say anything about seeing anything in his hands, certainly not wielding any weapon. And the appellate court in Billups said that that was a substantive difference, that there was a sufficient contradiction in the evidence, that the defense was entitled to a 115-10.1 instruction, that they could use this to show that the defendant did not have a weapon in his hands. And that's exactly the same situation that we have here. Triplett gave a statement. It's recorded. He says this fellow has a gun. He says that fellow has a gun. He says he sees the defendant. He doesn't say anything about a gun. The defense attorney did not have the jury instructed under 115-10.1 that this was substantive evidence that he didn't have a gun. And this is crucial because the defendant testified he didn't have a gun. There's evidence that's available under Illinois law directly from the state's witness that the defendant didn't have a gun, and it was not used. That jury instruction wasn't tendered. That's correct. Instead, the jury was told they'd given a limited instruction, that it was only available for a limited period. Now, Triplett's evidence is important for another reason also. This changing story because the police called Triplett about two weeks before trial and said, say, you suppose that you might have seen a weapon in Mr. Thompson's hands? And with that prodding, then, for the first time, Triplett says, yes, I saw a gun. But the police don't tell the prosecutor, and they don't tell the defense. That's a discovery violation. There's a deliberate withholding of evidence, in this case, by the police. Now, the state argues this isn't a discovery violation because there's no recorded statement that wasn't written down. But, of course, that's not true. Did the trial attorney impeach Triplett with the prior insistence? Yes. There was a recorded statement. The original statement that was given to the defense was a recorded statement that had this business about not seeing anything. And so because there was a change in the evidence, something that was given to the defendant, made a characterization as the evidence that would be presented, and the state knew that that was no longer accurate, that there had been a change, then under the continuing duty to dispose, the state had to reveal the change, and it didn't do it. So that's the second reason it's important. The third reason it's important is because this is part of a pattern. This is not an isolated incident of the police hiding evidence until the last minute. They did this with Michael Green's statement. All these witnesses here and there in the car gave a DVD statement recording. It was recorded by DVD, by audio. There was transcripts promptly made. There was writing in notes, handwritten notes, about these statements. And the defense requested these. They requested all these, including the notes. The state did not object. The state instead said, we have all these already. Come and look at them. The defense goes and looks at them. They see all these. There's nothing from Michael Green. The defense led to believe that Michael Green didn't make the statements. It wasn't until later that they found out that he did. How did it happen? Why did it happen? Michael Green had given a recorded statement. It was supposed to have been copied months before trial by the sheriff and given to Williamson County as part of the murder investigation. But the police deliberately did not give the DVD, the audio tape, or the transcript or the notes to the prosecutor. And it didn't get to the defense. When the defense found this out and tried to get copies, what happened? This record shows that three different police officers took this DVD out of the evidence locker without signing for it, put it back in the evidence locker without signing it back in. Two of them took it to their private homes, and the evidence is they say that when they try to look at it and they try to copy it, they cannot because it has not been electronically sealed. Well, if they couldn't look at it and couldn't copy it because it had not been electronically sealed, how would a copy have been made for Williamson County months before? And how, if it's so, if this is innocent? There's 18 minutes of silence on this DVD, and it's exactly at the position where the police are questioning Michael Green about his connection to the murder because he was interrogated as a murderer. He's the one who had them drive to his office house where the family were met, where the cousin was. So we'd ask this court to find if there were due process violations which result in denial of fair trial. Reverse the conviction and demand for a new trial. Thank you, Mr. Wells. You have an opportunity for rebuttal. Ms. Camden. Thank you. May I please report, counsel? The defendant was entitled to a fair trial, not a perfect trial. He received a fair trial, and this court should affirm. Before I address some of the points that counsel made today, I'd like to address a couple of points in the reply. First, it states on page 5 that the jury never learned of crucial material to impeach the state's key witness, namely that he was on parole. The people's answer brief on page 7 establishes that the record does not show if or indeed when Green was on MSR. Second, I'd like to note that the court has twice stricken this argument from the briefs stating that the claim would collapse without material outside the record. Next, I'd like to note on page 6 of the reply brief states that this court should use a standard of review that's only been adopted for use in appeals courts after the court has found that there has been error. The defendant can't ask for a review under a standard assuming error. It was first established that there was error, and indeed as is so often the case in this appeal that it was preserved for review. Next, the reply brief on page 5 claims that the state was attempting to re-argue the evidence in this case. There's no need to re-argue the evidence that the defendant was convicted of aggravated unlawful restraint. In fact, it's the defendant who here today is arguing the sufficiency of the evidence, and he was attempting to re-argue the evidence by attempting to impeach the credibility of the witnesses who saw him holding a gun and testified that that's what they saw. Defendant at page 5 of the reply brief claims that he was guilty of aggravated unlawful restraint only if he used a gun. What the defendant overlooks is that he was charged with and convicted of aggravated unlawful restraint on an accountability theory. Whether the defendant used a gun is irrelevant to whether Michael Thompson used a gun, and there were three witnesses, Green, Triplett, and Cummings, who were all the surviving passengers of that car who testified that Michael Thompson used a gun. They all testified that he pulled a gun, pointed it at everyone in the car. Vincent bound the hands of everyone in the car. Thompson commanded Green, sorry, summoned the defendant over to the car to take Green, and the defendant approached the car and did take Green into the house. Now, separately, there was evidence that the defendant used a gun. Green and Cummings testified that Michael Thompson told the defendant to shoot Green if he ran, and Green and Triplett, again, testified that they saw the defendant's gun. But the defendant was convicted of aggravated unlawful restraint on an accountability theory, and that's something that was overlooked in the briefing and also today. By the way, I want to point out that the People's Exhibits I, IV, and V show cuts to Green's head. Defendant claims that Triplett made a prior inconsistent omission such that the defense counsel was ineffective for not asking for a instruction under Section 115-10.1. Triplett's prior statement was not inconsistent with his trial testimony. Triplett's statement was given on the night of the abduction and the murder before Williamson County investigators were even sure that there had been a murder. The lead questioner in Williamson County who interviewed Triplett in Williamson County about the events that occurred in Williamson County testified that the focus of that interview, before they even found Benjamin Slaughter's body, or indeed had found the armed killer on the loose in Williamson County, testified that the focus of that interview was on the events in Williamson County, not the tangentially related crime that occurred in Jackson County before the events of interest to them. This was not a prior inconsistent omission because it was unlikely that there was any evidence of greens being ushered from the car. In fact, all the testimony at trial was that he was never asked about that question in Williamson County. Additionally, I want to point out that failure to instruct the jury... There was no interrogation, there were no questions that related to how they got over to Williamson County by the Williamson County authorities? You say their focus was naturally on the Williamson County incident. That's definitely true. I don't want to say that there were no questions about the fact that they had originated from Jackson County, but I do want to say that the minutia of a person being taken out of the car who himself never went to Williamson County was something... Their primary focus, though, was what happened there in Williamson County? Absolutely. And even if this was error, it's not reversible unless there's a reasonable probability that the trial would have been different. And again, this prior statement was used to impeach Triplett, as Justice Wexton pointed out. And again, I want to note that the defendant was convicted on an accountability theory here, which also goes to whether or not there's a possibility if the jury and the structure substantively consider an alleged omission of the fact that the defendant used the gun. That was not the issue for the jury. Further, there was no discovery violation regarding Triplett's testimony that the defendant used the gun. I want to point out that the reply brief at page 7 argues, based on the case Tripp, Tripp is a Rule 412A2 case dealing with disclosure of defendant's statements. That's not what we're dealing with here. Also, Tripp involved a, quote, mischaracterization of a category of witness, not of the content of the witness's statements. The witness in that case was pre-categorized before trial as only a life or death witness. That's, again, not what happened here. This case is, this question would arise under Rule 412A1, which states that the statement would only have to be disclosed if it was reduced to writing in his own words or if there was bad faith on the part of the state. And I want to point out that the judge didn't believe that there was bad faith in this case and that the prosecutor, Mark Hamrock, disclosed the content of his telephone conversation with Tripp as the day after it occurred, as soon as he realized that the defense counsel didn't know because he hadn't had an interview with Tripp yet. I also want to point out that, again, even if this was a discovery violation, there was no prejudice, not only because the defendant was convicted on an and received a continuance in order to interview Tripp. He confirmed the next morning that he'd spoken to Tripp, and, again, he had time to prepare a lengthy impeachment of Tripp with this statement as opposed to his prior Williamson County statement, impeaching not only him but also the officers who interviewed him. And then, finally, with regard to the discovery violation, regarding the audio of the green tape. First off, I believe I heard the allegation today that the police deliberately did not turn over the DVD to the prosecutor. I don't believe that's what the record shows. The defense counsel requested the DVD of Green's statement about six days before the trial began, and that began the chain of events that you see before you in the record. And, furthermore, I don't know that a copy actually was made for the Williamson County trial of Michael Thompson, that that trial had not occurred at the time of this trial. So we don't know whether the same problem occurred on that DVD. Did the trial court sanction the state regarding that? Yes, Your Honor. What was the sanction? The sanction was that in Judge Grace's courtroom, usually a transcript of a tape could be used for impeachment only by agreement. He ruled that the defense counsel would automatically get the right to impeach using the transcript or the DVD as the defense counsel chose. And it's worth noting that the defense counsel did not avail himself of that sanction and didn't use either to impeach any witness. So the judge did find a discovery violation, did issue a sanction, and I want to point out that the judge found that there was no bad faith on the part of the Carbondale Police Department. The judge found credible Lieutenant Echols' explanation for the reason for this gap, and the judge held that there was nothing deliberate. Thank you, Ms. Grace. Thank you, Your Honor. The final, Mr. Wells. Your Honor, the matter of the witness being on parole is before this court because that wasn't something that was taken, supported by something that was added to this record by other public records. Instead, it was brought up in open court and the state did not object to it. And so we can assume that the reason that the state did not object to it is because they knew that he was off parole at the time, and yet the defense counsel did not use this to impeach him at trial. That's where the ineffectiveness of the counsel claim comes from in terms of parole. Of course, arguing the evidence is crucial in this case because we're having to argue that the evidence is close in order to establish that there's error. The state's error is in taking all the inferences from the evidence and likening it to the state, as if this was a reasonable doubt case. And that's not true. If you want to find out if there could have been an effect, you have to look at the evidence without that. You have to look at evidence that could have supported the opposite version. And the state also relies on the testimony of the prosecutor who says he first learns of this change in testimony of Triplett in a telephone conversation the day before he reveals it. That's not what Triplett says. He says two weeks before trial he talked to the police and told the police about it. And it's the police that were alleged had withheld this evidence. They withheld this evidence of Green's statement and the silence in it, and they withheld the evidence of the change. The defense attorney requested this DVD in December, not six days before trial. He was told by the state that they had everything. It was only six days before trial that he learned that they had been holding something back. The court refused to have the written notes turned over, even though it was requested by the defense attorney, even though the defense attorney had requested that back in November and there was no objection from the state. And the court failed to have the jury instructed that that 18-minute gap could be used by the jury under the assumption that whatever was in that 18-minute gap was something that was harmful to the state. Besides that, the prosecutor argued the prior consistent statements of Green substantively tell the jury that the fact that he made the same statement more than once was corroborative, and of course it's not corroborative under Illinois law. You can't corroborate yourself by telling lots of people that you told the shop owner a warning about the dangers of a slip-and-fall in front of his store. That doesn't corroborate your story. It's the same, of course, in a criminal case. You can't support your story by telling lots of people the same story over and over again. That's exactly how the prosecutor used it here. That alone is enough for a reversal error in a case like this where the evidence is so close. I would ask the court to reverse the conviction of the man whose case is under trial. Thank you, Mr. Wells. Ms. Camden, I appreciate your arguments and briefs. The court will take the matter under advisement and render its decision. We'll stand at a short recess.